H. ALEXANDER FISCH (STATE BAR NO. 223211)
afisch@stutman.com
MICHAEL S. NEUMEISTER (STATE BAR NO. 274220)
mneumeister@stutman.com
STUTMAN, TREISTER & GLATT, P.C.
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067
Telephone:  (310) 228-5600
Facsimile:   (310) 228-5788

[Proposed] Reorganization Counsel for
Debtor and Debtor in Possession

<u>Debtor's Mailing Address</u>:
18255 South Vermont Avenue, P.O. Box 19
Gardena, CA 90248

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re | Case No. 2:11-bk- |
| ROOSEVELT MEMORIAL PARK ASSOCIATION, a California non-profit public benefit corporation, | Chapter 11 |
| Debtor. | **EMERGENCY MOTION FOR ORDER: (I) DEEMING UTILITIES ADEQUATELY ASSURED OF FUTURE PERFORMANCE; AND (II) ESTABLISHING PROCEDURES FOR DETERMINING REQUESTS FOR ADDITIONAL ASSURANCE PURSUANT TO BANKRUPTCY CODE SECTION 366; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | Hearing |
| | Date: [To be set by Court]<br>Time: [To be set by Court]<br>Place: Courtroom<br>255 E. Temple Street, Room 940<br>Los Angeles, CA 90012 |

547511v1

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE DEBTOR'S SECURED CREDITORS, THE TWENTY LARGEST UNSECURED CREDITORS OF THE DEBTOR, THE UTILITIES, AND OTHER PARTIES IN INTEREST:**

Roosevelt Memorial Park Association (the "Debtor") in the above-captioned case, hereby moves (the "Motion") the Court for entry of an order, in substantially the form annexed hereto as Exhibit "1," granting the relief requested below.

## RELIEF REQUESTED

In connection with their ongoing business operations, the Debtor obtains electricity, natural gas, water, telephone, sewer, trash removal, telecommunications services, and other similar services ("Utility Services") from numerous companies. Any disruption to the provision of such services would be catastrophic to the Debtor's businesses and ability to reorganize. The Debtor, therefore, moves the Court for entry of an order in the form attached hereto as Exhibit "1":

(a) prohibiting the Debtor's utility service providers (the "Utilities") from altering, refusing, or discontinuing service to, or discriminating against, the Debtor;

(b) providing that the Debtor's creation of an escrow account in favor of the Utilities, in an amount equal to one average month of the Debtor's collective payments to the Utilities, provides the Utilities "adequate assurance of payment" within the meaning of section 366 of title 11 of the Unites States Code (the "Bankruptcy Code");

(c) establishing procedures for determining requests by Utilities for additional assurances; and

(d) authorizing the Debtor to supplement the list of Utilities in Exhibit "2" attached hereto to add Utilities not listed in Exhibit "2" but subsequently discovered, and applying the procedures set forth herein to such additional Utilities.

The Debtor requests, pursuant to Rules 2081-1(a)(3) and 9075-1(a) of the Local Bankruptcy Rules (the "Local Rules"), that the Court schedule a hearing on this Motion on less than two court days notice, upon timely notice to the Office of the United States Trustee (the "UST"), the

twenty largest unsecured creditors of the Debtor, and other interested parties, if any (collectively, the "Interested Parties").  A copy of this Motion was served, concurrent with the filing hereof with the Court, on the Interested Parties by courier or overnight delivery, and additionally, where an electronic mail address was available, by electronic mail for immediate delivery.  The Debtor, upon being informed by the Court of the time and date of the hearing on this Motion, will provide telephonic notice,[1] to the extent possible, of the emergency hearing and the substance of this Motion to the Interested Parties in accordance with Local Rule 9075-1.

This Motion is based on the Memorandum of Points and Authorities below, the evidence contained in the "Declaration of Malcolm G. Smith in Support of First Day Motions" (the "Smith Declaration") filed concurrently herewith, the record in these cases, and the arguments, evidence and representations that may be presented at or prior to the hearing on this Motion.

**PLEASE TAKE NOTICE,** any response, written or oral, to the Motion may be presented before or at the time of the hearing on the Motion if one is scheduled by the Court. See Local Rule 9075-1(a)(7).

**WHEREFORE**, based on the Memorandum of Points and Authorities set forth below, the Debtor respectfully requests entry of an order, in the form annexed hereto as Exhibit "1": (i) prohibiting the Utilities from altering, refusing, or discontinuing service to, or discriminating against, the Debtor; (ii) providing that the Debtor's creation of an escrow account in favor of the Utilities, in an amount equal to one average month of the Debtor's collective payments to the Utilities, constitutes "adequate assurance of payment" within the meaning of Bankruptcy Code section 366; (iii) establishing procedures for determining requests by Utilities for additional assurances; (iv) authorizing the Debtor to supplement the list of Utilities in Exhibit "2" attached hereto to add Utilities not listed in Exhibit "2" but subsequently discovered, and applying the procedures set forth herein to such additional Utilities; and (v) granting any and all further relief the Court deems to be just and proper.

---

[1]  In the event that certain Interested Parties cannot be reached by telephone, the Debtor will attempt to contact such parties by facsimile, overnight service, or electronic mail.

547511v1

2

1  Date:  May 16, 2011                    Respectfully submitted,

2

3                                          */s/ Michael S. Neumeister*
                                           H. ALEXANDER FISH, and
4                                          MICHAEL S. NEUMEISTER, Members of
                                           STUTMAN, TREISTER & GLATT
5                                          PROFESSIONAL CORPORATION
                                           [Proposed] Reorganization Counsel for
6                                          Debtor and Debtor in Possession

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS[2]

**A.    Petition Date and Jurisdiction.**

On April 17, 2011 (the "Petition Date"), Roosevelt Memorial Park Association (the "Debtor") commenced the above-captioned chapter 11 case by filing a voluntary petition under chapter 11 of the Bankruptcy Code.[3]

Pursuant to Bankruptcy Code sections 1107(a) and 1108, the Debtor is continuing to manage its financial affairs as debtor in possession.

This Court has jurisdiction over these chapter 11 cases and this motion pursuant to 28 U.S.C. §§ 1334 and 157(b), and venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This Motion is a core proceeding under 28 U.S.C. § 157(b)(2)(M).

**B.    General Background of the Debtor.**

The Debtor, a California non-profit public benefit corporation, currently owns and operates the cemetery doing business as Roosevelt Memorial Park and Mortuary[4] (the "Cemetery"). The Debtor has continually operated the Cemetery since it obtained the real property on which the Cemetery is located pursuant to an agreement executed on February 5, 1924 (the "1924 Agreement"). The Cemetery consists of approximately forty (40) acres of real property situated in Los Angeles, California, adjacent to Gardena, California.

---

[2] Terms not otherwise defined herein shall have the same meanings ascribed to them in the preceding Motion.

[3] For a description of the Debtor's general background and business operations, refer to the "Emergency Motion for Authorization to Pay Prepetition Employee Compensation and Other Obligations and to Honor Employee Benefits in the Ordinary Course of Business," filed concurrently with this Motion.

[4] Independent Mortuary Service Corporation ("IMSC") is a wholly-owned subsidiary of the Debtor. IMSC owns and operates the mortuary located at and associated with the Cemetery. IMSC's business generally includes funeral services, casket sales, etc. The Debtor and IMSC are separate and distinct corporate entities and IMSC is not a debtor party.

**C.    Events Leading to the Chapter 11 Filings.**

The 1924 Agreement which resulted in the transfer of the real property on which the Cemetery exists to the Debtor was not a typical sale agreement. Rather than provide standard payment in the form of cash or a note, the Debtor was to satisfy the purchase price by paying the sellers and their successors (known colloquially as the "IP Group") one-half of all proceeds that the Debtor received from the sale of burial lots.

As a cemetery being operated within California, the Debtor is required to comply with certain regulations mandated by state statute. One such regulation requires the Debtor to maintain a minimum "endowment care fund" (the "Care Fund") to be used for the proper maintenance of the Cemetery. CAL. HEALTH & SAFETY CODE § 8738. The state-imposed requirement to maintain an endowment care fund is based on the realization by the State of California that once all burial space within a cemetery has been sold, a cemetery cannot generate sufficient revenue for the perpetual maintenance of its grounds. As a result, cemeteries are required to set aside amounts adequate to pay for future cemetery maintenance and upkeep in separate endowment care trusts. See id. Unfortunately the terms of the 1924 Agreement have made it impossible for the Debtor to operate and maintain the Cemetery for present purposes, while also contributing sufficient amounts to the Care Fund. As a result, the Care Fund has become severely underfunded.

Furthermore, as a non-profit corporation under section 501(c)(13) of the Internal Revenue Code, the Debtor is required to comply with specific regulations under sections 503 and 505 of the Internal Revenue Code in order to maintain its non-profit status. Because the "sale" terms under the 1924 Agreement permit the private "sellers" and their successors to benefit from the Cemetery's profits indefinitely, the Debtor's board of directors is concerned that, under Revenue Rulings and Treasury Regulations published by the IRS, further performance under the terms of the 1924 Agreement would result in the Debtor losing its non-profit status.

Due to the Care Fund's severe underfunding and the concern that continued payments to the IP Group would result in the loss of the Debtor's non-profit status, the Debtor's directors elected to cease paying the IP Group in 2007. As a result of the Debtor's inability to make continued

payments to the IP Group, representatives of the IP Group commenced a state court action against the Debtor. On March 18, 2011, a tentative ruling was entered in favor of the plaintiffs, reflecting the state court's opinion that the Debtor must pay $685,320.00 on account of unpaid amounts under the 1924 Agreement. The Debtor and the plaintiffs have stipulated to the terms of a judgment, and, on May 16, 2011, the Debtor commenced this chapter 11 case.

**D.    The Utilities.**

In connection with its ongoing business, the Debtor currently obtains Utility Services[5] from approximately five companies, divisions thereof and service providers (the "Utilities") at the Debtor's sole location. The total monthly average of all payments to Utilities is approximately $6,880.75. By their nature, the Utility Services are critical to the Debtor's operations and cannot be replaced. If Utility Services to the Debtor's property were disrupted, even for a brief period, the Debtor would be unable to maintain the property on which the Cemetery operates and the Cemetery might become an "unkempt . . . place[] of reproach and desolation," contrary to the goals of the California Health and Safety Code. See CAL. HEALTH & SAFETY CODE § 8736 (2011). Furthermore, if Utility Services to the Debtor's office facility were disrupted, the Debtor's sales and management personnel simply could not function, and the effect on customer obligations and corresponding customer goodwill and satisfaction would be devastating.

Attached hereto as Exhibit "2" is a list of all or substantially all of the Utilities that the Debtor has identified that are currently providing Utility Services to the Debtor.[6] Pursuant to this Motion, the Debtor is seeking relief as to all Utilities, not just those identified in Exhibit "2." To the extent necessary, the Debtor shall supplement the list of Utilities to add Utilities not included in Exhibit "2" as soon as such Utilities are identified, by serving notice and a copy of the order on this Motion on the Utility and filing a supplement to Exhibit "2" with the Court. The Debtor requests

---

[5] The Bankruptcy Code does not define "utility," but the Debtor believes that all of the Utilities qualify as a "utility" within the meaning of Bankruptcy Code section 366.

[6] The Utilities provide single invoices to RMPA for the Utility Services provided to RMPA and IMSC, and do not delineate the services provided to either entity. As a result, RMPA pays the full amount owed to the Utilities, and IMSC's pro rata share for any Utility Services is accounted for through internal bookkeeping. However, given the nature of IMSC's business, IMSC's pro rata share of the Utility Services is generally de minimis in comparison to the Utility Services used by RMPA in its operation and maintenance of the Cemetery.

that the procedure set forth in the proposed order, attached hereto as Exhibit "1," also applies to determine any dispute with any supplemental Utilities regarding adequate assurance of payment.

Prior to the commencement of their chapter 11 cases, the Debtor generally paid all of its utility bills in a timely manner.  To the best of the Debtor's knowledge, there are no defaults or arrearages of any kind with respect to any undisputed utility bills, other than current charges which, as of the Petition Date, may have accrued but have not yet been billed, or which may have been billed but were not yet due, or amounts whose payment may have been delayed or interrupted by the filing of these chapter 11 cases.

## II.

## ARGUMENT

**A.    Bankruptcy Code Section 366.**

Pursuant to Bankruptcy Code section 366, a utility may not alter, refuse, or discontinue services to, or discriminate against, a debtor solely on the basis of the commencement of the bankruptcy case or the debtor's failure to pay a prepetition debt.  11 U.S.C. § 366(a).  Bankruptcy Code section 366 is intended to apply to entities providing electricity, natural gas, water, and/or telephone services, as well as any other entity that supplies services that cannot be readily obtained or replaced elsewhere, or which has a monopoly with respect to the services it provides a debtor.  As explained by the legislative history,

> [Section 366] is intended to cover utilities that have some special position with respect to the debtor, such as an electric company, gas supplier, or telephone company that is a monopoly in the area so that the debtor cannot easily obtain comparable service from another utility.

See H.R. Rep. No. 95-595, at 350 (1977); S. Rep. No. 95-989, at 60 (1978); see also In re Coastal Dry Dock & Repair Corp., 62 B.R. 879, 883 (Bankr. E.D.N.Y. 1986) (holding that the landlord for the Brooklyn Naval Yard "occupies a special position with respect to the debtor in its role as [the debtor's] utility supplier").

**B.    The Debtor Has Already Provided Adequate Assurance Of Payment By Establishing An Escrow Account.**

Bankruptcy Code section 366(c) provides that in a chapter 11 case:

547511v1

7

> Subject to paragraphs (3) and (4), . . . a utility . . . may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee <u>adequate assurance of payment</u> for utility service that is satisfactory to the utility.

11 U.S.C. § 366(c)(3)(A) (emphasis added).

Bankruptcy Code section 366(c)(1) provides that "assurance of payment means a cash deposit; a letter of credit; a certificate of deposit; a surety bond; a prepayment of utility consumption; or another form of security that is mutually agreed on between the utility and the debtor or the trustee." 11 U.S.C. § 366(c)(1)(A). For purposes of Bankruptcy Code section 366(c), "an administrative expense priority shall not constitute an assurance of payment." 11 U.S.C. § 366(c)(1)(B).

Section 366(c)(3) further provides that:

> In making a determination under this paragraph whether an assurance of payment is adequate, the court may not consider –
>
> (i)   the absence of security before the date of the filing of the petition;
>
> (ii)  payment by the debtor of charges for utility service in a timely manner before the date of the filing of the petition; or
>
> (iii) the availability of an administrative expense priority.

11 U.S.C. § 366(c)(3)(B).

The Debtor has complied with Bankruptcy Code section 366 and has provided the Utilities with adequate assurance of payment as required. The Debtor will establish an escrow account, into which the Debtor will deposit funds equaling one month's average payments to all of the Utilities. The amounts in this account will serve as security for the Utilities during the pendency of this case. Bankruptcy Code section 366(c)(1)(A) expressly contemplates such an arrangement by providing that "assurance of payment" can be a cash deposit. 11 U.S.C. § 366(c)(1)(A). Further, by providing that prepayment of utility consumption, which is generally paid monthly in arrears, may be "assurance of payment," section 366 implies that assurance in the amount of one month's utility service can be adequate. Indeed, bankruptcy courts have authorized procedures similar to those requested in this Motion in other chapter 11 cases, and have found that assurance equal to a single

month's utility service is adequate under circumstances such as those facing the Debtor in this case. See, e.g., In re Coastal Dry Dock & Repair Corp., 62 B.R. 879, 883-884 (Bankr. E.D.N.Y. 1986); In re Northwest Recreational Activities, Inc., 8 B.R. 7, 10 (Bankr. N.D. Ga. 1980).

The assurance proposed by the Debtor is substantial and represents a significant portion of the cash available during the most difficult point in any bankruptcy case. Therefore, the Debtor requests entry of an order determining that the Debtor's creation of an escrow account in favor of the Utilities, in an amount equal to one average month of the Debtor's collective payments to the Utilities, provides the Utilities "adequate assurance of payment" within the meaning of Bankruptcy Code section 366.

**C.    This Court Should Establish Procedures For Utilities That Object To Its Determination Of Adequate Assurance.**

Bankruptcy Code section 366(c)(3) expressly provides for this Court's authority to adjudicate any disputes related to the adequacy of assurance provided by the Debtor. Section 366(c)(3)(A) of the Bankruptcy Code states that, "[o]n request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2)." 11 U.S.C. § 366(c)(3)(A). As described above, the Debtor proposes to establish a fair and reasonable process for the Court to consider whether modification of the amount of adequate assurance of payment is necessary.

More specifically, the Debtor requests entry of an order approving the following procedures (the "Objection Procedures"):

(a) A Utility that objects to the Court's determination that the Debtor has provided adequate assurance must file an Objection that sets forth the average monthly usage of the Utility Service for the most recent six (6) month period, the prepetition amount alleged to be due and owing, and the amount of any deposit made by the Debtor prior to the Petition Date;

(b) This Court shall set a hearing date within thirty (30) days of the Petition Date to consider any Objection pursuant to Bankruptcy Code section 366(c)(3)(A);

(c) In the event a Utility not listed on Exhibit "2" seeks additional assurance, it must file and serve an Objection within fourteen (14) days after the date upon entry of the Order approving the Motion. Such Utility shall be deemed to have been provided with adequate assurance of payment in accordance with Bankruptcy Code section 366, without the need of an additional deposit or other security, until an order of the Court to the contrary is entered.

Under the circumstances of this case, the Utilities would not be prejudiced by the entry of an order deeming them adequately assured without the need for additional deposits and establishing procedures for objecting to the determination of adequate assurance of payment. The Debtor has generally paid its utility bills on a timely basis, and there are no material prepetition payment defaults or arrearages, other than: (i) accrued prepetition charges which had not yet been billed or which were not yet due or payable as of the Petition Date; or (ii) amounts whose payment may have been delayed or interrupted by the filing of the case.

Furthermore, the relief requested in this Motion will be without prejudice to the rights of any Utility to apply on a timely basis to this Court for additional assurances of payment, in the form of individual deposits or other security, upon an appropriate showing. The Objection Procedures will provide each Utility with a 30-day window to make such a request. The Debtor will serve a copy of the entered order on all Utilities in order to ensure that each of them are aware of their rights to request additional assurances of payment.

A Utility that is not listed in Exhibit "2" and believes that some additional assurance is required cannot shut off its services to the Debtor until after that issue is resolved by this Court. The Debtor is complying with Bankruptcy Code section 366(c)(3) by requesting that any further modification of the adequate assurance be made within the 30-day period provided by Bankruptcy Code section 366(c)(2), during which the Utilities may not alter, refuse, or discontinue service. See 11 U.S.C. § 366(c)(3)(A).

Bankruptcy Code section 366 expressly contemplates the procedure proposed herein. If Utilities could simply terminate service notwithstanding a modification request made to the Court, Bankruptcy Code section 366(c)(3) would be rendered moot, which is not the intention or plain

meaning of the amended statute. Moreover, if Utilities are permitted to unilaterally terminate Utility Services on the 31st day after the Petition Date because they insist on a greater deposit or some more onerous security, they could severely disrupt the Debtor's operations, significantly diminish the Debtor's going concern value, and jeopardize the Debtor's reorganization prospects. Nothing in the Bankruptcy Code prevents this Court from deeming all Utilities adequately assured while the Court performs its adjudicative function.

As soon as practicable upon the entry of the Order relating to this Motion, the Debtor will serve a copy of the Order upon each Utility listed on Exhibit "2," thereby notifying all Utilities of their rights. Furthermore, the Debtor will serve the Order on any subsequently discovered Utility that was not originally listed in Exhibit "2."

**D.     Waiver of Bankruptcy Rules 6004(a) and 6004(h).**

To implement the foregoing successfully, the Debtor seeks a waiver of the notice requirement under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale or lease of property under Bankruptcy Rule 6004(h).

### III.

### CONCLUSION

**WHEREFORE**, based on the arguments and authorities set forth above, the Debtor respectfully request entry of an Order, in the form annexed hereto as Exhibit "1": (i) prohibiting the Utilities from altering, refusing, discontinuing service to, or discriminating against the Debtor; (ii) determining that the Debtor's creation of an escrow account in favor of the Utilities in an amount equal to one average month of the Debtor's collective payments to the Utilities constitutes adequate assurance of future payment within the meaning of Bankruptcy Code section 366, without need for additional deposits or other security from the Debtor; (iii) establishing procedures for determining requests by Utilities for additional assurances of payment; (iv) authorizing the Debtor to supplement the list of Utilities in Exhibit "2" to add Utilities not listed therein but subsequently discovered, and applying the procedures set forth herein to the supplemental Utilities; and (v) granting any and all further relief the Court deems just and proper.

Date:  May 16, 2011                                  Respectfully submitted,


                                                     */s/ Michael S. Neumeister*
                                                     H. ALEXANDER FISCH, and
                                                     MICHAEL S. NEUMEISTER, Members of
                                                     STUTMAN, TREISTER & GLATT
                                                     PROFESSIONAL CORPORATION

                                                     [Proposed] Reorganization Counsel for
                                                     Debtor and Debtor in Possession

# **EXHIBIT "1" – PROPOSED ORDER**

H. ALEXANDER FISCH (STATE BAR NO. 223211)
afisch@stutman.com
MICHAEL S. NEUMEISTER (STATE BAR NO. 274220)
mneumeister@stutman.com
STUTMAN, TREISTER & GLATT, P.C.
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067
Telephone:  (310) 228-5600
Facsimile:    (310) 228-5788

[Proposed] Reorganization Counsel for
Debtor and Debtor in Possession

<u>Debtor's Mailing Address</u>:
18255 Sourth Vermont Avenue, P.O. Box 19
Gardena, CA 90248

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>ROOSEVELT MEMORIAL PARK<br>ASSOCIATION, a California non-profit public<br>benefit corporation,<br><br>                        Debtor. | Case No. 2:11-bk-<br><br>Chapter 11<br><br>**ORDER (I) DEEMING UTILITIES ADEQUATELY ASSURED OF FUTURE PERFORMANCE; AND (II) ESTABLISHING PROCEDURES FOR DETERMINING REQUESTS FOR ADDITIONAL ASSURANCE PURSUANT TO BANKRUPTCY CODE SECTION 366**<br><br><u>Hearing</u><br><br>Date:  [To be set by Court]<br>Time:  [To be set by Court]<br>Place: Courtroom<br>        255 E. Temple Street, Room 940<br>        Los Angeles, CA 90012 |

547511v1                                                                                14

Upon review and consideration of the "Emergency Motion for Order (I) Deeming Utilities Adequately Assured of Future Performance; and (II) Establishing Procedures for Determining Requests for Additional Assurance Pursuant to Bankruptcy Code Section 366" (the "Motion")[7], filed by Roosevelt Memorial Park Association (the "Debtor"), the debtor-in-possession in the above-captioned case, as well as the "Declaration of Malcolm G. Smith in Support of First Day Motions" (the "Smith Declaration"), all other pleadings and evidence submitted in connection with the Motion, and the arguments of counsel, the Court hereby finds that:

1. Notice was appropriate under the circumstances; and

2. Good cause exists to grant the relief requested in the Motion.

**THEREFORE, IT IS ORDERED THAT**:

1. The Motion is granted in its entirety.

2. The Debtor's utility service providers (the "Utilities") are prohibited from altering, refusing, discontinuing service to, or discriminating against the Debtor.

3. The Debtor is authorized to, in the exercise of its business judgment and in its sole discretion, create an escrow account in favor of the Utilities, in an amount equal to one average month of the Debtor's collective payments to the Utilities, which, without any additional deposits or other security from the Debtor, will constitute "adequate assurance of payment" to the Utilities within the meaning of Bankruptcy Code section 366.

4. A Utility that objects to this Court's determination that the Debtor has provided adequate assurance must file an Objection that sets forth the location for which Utility Services were provided, the average monthly usage for the most recent six (6) month period, the prepetition amount alleged to be due and owing, and the amount of any deposit made by the Debtor prior to the Petition Date.

5. This Court shall set a hearing date within thirty (30) days of the Petition Date to consider any Objection pursuant to Bankruptcy Code section 366(c)(3)(A).

---

[7] All capitalized terms not explicitly defined herein shall have the same definition ascribed to them in the Motion.

15

547511v1

6. In the event a Utility not listed in Exhibit "2" of the Motion seeks additional assurance, it must file and serve an Objection within fourteen (14) days after the date of entry of the Order approving the Motion. Such Utility shall be deemed to have been provided with adequate assurance of payment in accordance with Bankruptcy Code section 366, without the need of an additional deposit or other security, until an order of the Court to the contrary is entered.

7. The Debtor is authorized to supplement the list of Utilities in Exhibit "2" of the Motion to add Utilities subsequently discovered, and is authorized to apply all procedures authorized herein to the supplemental Utilities.

Presented by:

*/s/ Michael S. Neumeister*
H. Alexander Fisch, and
Michael S. Neumeister, members of
STUTMAN, TREISTER & GLATT, P.C.
[Proposed] Reorganization Counsel
for Debtor and Debtor-in-Possession

# # #

## **EXHIBIT "2" - LIST OF UTILITIES**

| Type of Service | Service Provider Name and Address | Average Monthly Amount Invoiced in Prior 6-Month Period | Amount Already on Deposit, If Any |
|---|---|---|---|
| Gas | The Gas Company<br>PO Box C<br>Monterey Park, CA 91756 | $1,411.47 | N/A |
| Electric/Water | LA Dept of Water & Power<br>PO Box 30808<br>Los Angeles, CA 90030 | $4,289.53 | N/A |
| Telephone | AT&T<br>Payment Center<br>Sacramento, CA 95887 | $555.67 | N/A |
| Water | Golden State Water Company<br>PO Box 9016<br>San Dimas, CA 91773 | $43.43 | N/A |
| Waste | Allied Waste<br>12949 Telegraph Road<br>Santa Fe Springs, CA 90670 | $580.65 | N/A |
| | **Total:** | $6,880.75 | N/A |

547511v1